AMERICAN HORSE PROTECTION ASSOCIATION, INC., Appellee,

v.

Clayton YEUTTER, Secretary, United States Department of Agriculture, Friends of the Showhorse Association, Inc., et al., Appellants.

Nos. 90–5151, 90–5211.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 11, 1990.

Decided Oct. 30, 1990.

---

Patricia D. Carter, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates, R. Craig Lawrence and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., were on brief, for appellant, Clayton Yeutter.

John M. Harmon, Austin, Tex., of the bar of the Supreme Court of Tex., pro hac vice, by special leave of the Court, with whom Herbert J. Miller, Jr., John J. Cassidy and David I. Gelfand, Washington, D.C., were on the brief, for appellants, Friends of the Showhorse Ass'n, Inc., et al.

Russell J. Gaspar, Washington, D.C., for appellees.

Before MIKVA, EDWARDS and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

The Secretary of the Department of Agriculture and the defendant-intervenors below appeal from an order granting summary judgment to the American Horse Protection Association ("AHPA") and vacating regulations promulgated under the Horse Protection Act, 15 U.S.C. §§ 1821–1831 (1988) (the "Act"). The district court decided that the agency regulations permitting the use of six-ounce action devices were arbitrary and capricious. We reverse.

## I. BACKGROUND

The Horse Protection Act is directed against the practice of deliberately "soring" Tennessee Walking Horses. Soring refers to the practice of placing action devices or rubbing chemical irritants on the lower areas of a show horse's front legs, inflicting pain so that the horse will adopt a high-stepping gait. According to the appellants, light weight action devices do not cause pain but act as harnesses or cues to get the horse to prance in the ring. The express purpose of the Act is to prevent practices that can "reasonably be expected" to cause soring, 15 U.S.C. § 1821(3), and the Act gives the Secretary of Agriculture broad rulemaking authority to pursue that end. *See* 15 U.S.C. § 1828.

An earlier regulation under the Act that permitted chains weighing up to ten ounces and rollers weighing up to fourteen ounces was vacated and remanded by this court in *American Horse Protection Association (AHPA) v. Lyng*, 812 F.2d 1 (D.C.Cir.1987). Part of the basis for that decision was a study conducted at Auburn University which found that action devices weighing ten ounces or more could cause soring and which the court felt was inadequately considered. Because the Secretary of Agriculture again failed to initiate amendatory rulemaking, the district court sent the case back to the agency one more time. *See AHPA v. Lyng*, 681 F.Supp. 949 (D.D.C. 1988). The new six-ounce regulations that ultimately emerged, 9 C.F.R. § 11.2(b)(1)–(2) (1990), were based in part on the finding in the Auburn study that

action devices weighing up to six ounces would not cause soring.

The American Horse Protection Association brought a suit challenging, *inter alia*, the new regulations governing the use of action devices. On June 1, 1990, the district court vacated the regulations as arbitrary and capricious, remanding the case to the Secretary of Agriculture for renewed consideration of whether these devices should be banned altogether "because allowing their use can reasonably be expected to encourage or cause the soring of horses, in violation of the Horse Protection Act." *American Horse Protection Association v. Yeutter* (D.D.C. June 1, 1990), at 3 (hereinafter "Mem. Op."). On June 14, 1990, this court granted the appellants' motion for a stay pending appeal and for expedited consideration.

The Secretary, joined by the defendant-intervenors below (two trade associations that represent the interests of the Tennessee Walking Horse industry), appeals the district court's decision concerning the action device regulations, arguing that the district court improperly substituted its judgment for an agency decision that was adequately supported by the rulemaking record. Appellants also challenge the district court's order of June 8, 1990, enjoining interim regulations permitting use of the six-ounce action devices pending review, arguing that this order impermissibly encroached upon the Secretary's enforcement authority. We reverse the district court's order which vacated the Secretary's regulations, and in turn vacate the district court's injunction.

## II. DISCUSSION

In challenging the new regulations, the AHPA did not contend that six-ounce devices cause soring. Instead, it argued that allowing *any* action devices encourages the absolutely prohibited practice of chemical soring to accentuate gait. There were comments in the administrative record stating that the use of action devices is so interrelated with chemical soring that even harmless action devices must be prohibited to eliminate the use of chemicals. The Secretary considered and rejected this argument, apparently crediting comments that denied any necessary connection between the two practices and further believing that enhanced enforcement of the ban on chemical soring was a more prudent course of action.

Our standard of review, like the district court's, is governed by the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A) (1988). The "arbitrary and capricious" standard of review as set forth in the APA is highly deferential, as the words suggest, and we are to presume the validity of agency action. *National Treasury Employees Union v. Horner*, 854 F.2d 490, 498 (D.C. Cir.1988). Judicial deference will, of course, give way when agency action is inconsistent with clear congressional intent or is unsupported by the agency record. Neither situation prevails here.

### A. *Purpose of the Horse Protection Act*

■ At the outset, the AHPA argues that the agency's regulations must be struck down under *Chevron v. NRDC*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), because the Secretary had no "authority" under the Horse Protection Act to allow any action device that may be used in conjunction with any pain-inducing technique or substance that causes horses to become sore. Appellee's Brief at 21. On this point, the AHPA claims that, under *Chevron*, the court must reject the Secretary's regulations because they do not "conform ... to the intent of Congress." *Id.* at 25. The district court apparently accepted this view, holding that, given the purpose of the Horse Protection Act, the "crucial issue is whether the use of action devices in the show ring constitutes a 'practice' that 'can reasonably be expected' to cause *or perpetuate* the practice of soring." Mem. Op. at 18 (emphasis added). That is simply not what the statute requires. Contrast this construction of the statute with the district court's own more limited interpretation of the Act in the earlier case as requiring a ban of "all devices reasonably capable of causing soreness." *AHPA v. Lyng*, 681 F.Supp. at 958. In

fact, the pertinent section in the Act defines soring as a practice from which a "horse suffers, or can reasonably be expected to suffer, physical pain or distress." § 1821(3).

The AHPA's position, too readily accepted by the district court, apparently rests on the assumption that the Secretary has an absolute statutory duty to eliminate any practice that might directly or indirectly lead to soring. The district court interpreted the Horse Protection Act as a presumption against any practice or device that might indirectly cause harm to a horse, rebuttable only by compelling justifications for continued use. The court's instinct is understandable: What is the point of permitting continued use of any action devices if they do no good and might possibly encourage other practices like chemical soring?

While the Act was clearly not a compromise between proponents and opponents of soring, *see AHPA,* 812 F.2d at 6, Congress was also motivated by a countervailing concern of preventing unfair competition against legitimate trainers of show horses. *Thornton v. United States Department of Agriculture,* 715 F.2d 1508, 1511 (11th Cir. 1983); *see also* S.Rep. No. 609, 91st Cong., 1st Sess. 1–2 (1969), U.S.Code Cong. & Admin.News 1970, 4870 (expressing concern for owners who used "patient, careful training ... and natural breeding," instead of soring, to achieve the distinctive walk). The legislative history accompanying the 1976 amendments added that "the amendments do not grant *carte blanche* authority to the Department of Agriculture. Its efforts to eliminate intentional injuring of horses should not be expanded to affect their competitive position within the walking horse class." S.Rep. No. 418, 94th Cong., 1st Sess. 3 (1975), U.S.Code Cong. & Admin.News 1976, 1696. It is true that this court previously discounted the same language somewhat in *AHPA v. Lyng,* 812 F.2d at 6 n. 2. But even as discounted, the language clearly undermines the district court's expansive characterization of the purposes of the Act in this case.

The Secretary was not under an express duty to prohibit any practice, however safe by itself, that might indirectly cause or perpetuate abuses already separately prohibited by the regulations. If such were the duty, the Secretary might have to eliminate horse shows entirely because they perpetuate the practice of soring. The appellants correctly emphasize that Congress could have, but did not, legislate a *per se* restriction on action devices, leaving it instead to the Secretary to promulgate appropriate rules. Hence, appellee's claim that the regulations should be struck down under the first step of *Chevron* are clearly without merit. The second step of *Chevron,* directing us to uphold an agency's interpretation of its governing statute unless it is unreasonable, is equally unavailing for the appellees. The six-ounce regulations chosen by the Secretary implicitly rest on an agency construction of the Act as only requiring the elimination of practices that can reasonably be expected to directly cause soring. The Secretary then decided that, absent any evidence of harmful consequences, the practice could continue. In light of our reading of the Act, this construction is not at all unreasonable.

The Secretary clearly acted within the bounds of his delegated authority under the Horse Protection Act when promulgating the contested regulations. In any event, this case was not brought before (nor decided by) the district court as a *Chevron* case. Instead, the trial judge was presented with a run-of-the-mill challenge to agency rulemaking brought under the judicial review provisions of the APA. Since judicial review under the APA "naturally begins with a delineation of the scope of the Secretary's authority and discretion," *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415–16, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), the tendency to confound APA review of agency rulemaking with *Chevron* review of an agency's construction of its organic statute may be inevitable. Having said that, and also finding no merit to appellee's misplaced *Chevron* arguments for affirmance, the only issue properly before us is whether

the Secretary's determination must be overturned as arbitrary and capricious. Our transgression into the purpose of the Act was not in vain, however, since it provides the necessary backdrop for applying the arbitrary and capricious standard in this case.

### B. *Arbitrary and Capricious Test*

■ Once the Secretary's duty under the Act is made clear, his decision to adopt the six-ounce regulation seems unassailable. This is precisely the threshold weight found to be harmless by the Auburn study. "[A]n agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Insur. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). The district court concluded that "the Secretary failed to examine further the critical relationship between chemical soring and the use of action devices in the show ring," Mem. Op. at 20, but the Secretary had before him comments from which he could have concluded that a total ban was unnecessary. Moreover, the final rulemaking decision indicated an awareness of—and seemingly reasonable response to—comments submitted by the AHPA and others advocating an outright ban.

> The AHPA, and many other commenters, stated that the use of action devices encourages the use of chemical substances on a horse's pasterns.... We are making no changes to the regulations based on these comments.... [T]he best evidence available to us—including a study conducted by Auburn University ...—indicates that while chains and other action devices weighing more than 6 ounces can sore horses, those weighing 6 ounces or less are not likely to sore horses. We continue to believe that properly conduct-

ed inspections are an effective means of detecting a horse with sore pasterns. 54 Fed.Reg. 7177 (Feb. 17, 1989). This satisfies the requirement that an agency "need only state the main reasons for its decision and indicate that it has considered the most important objections." *Simpson v. Young,* 854 F.2d 1429, 1435 (D.C.Cir. 1988).

The AHPA complains that appellants rely on *post hoc* evidence in the form of an affidavit by Dr. Dussault, a USDA veterinarian. If this were the only basis for justifying the agency's decision, that would present a problem. But there were other uncontroverted studies that concluded that action devices weighing up to six ounces would not cause soring.

The AHPA does not dispute these findings, presumably because its theory of causation is even more attenuated. One of the AHPA's underlying complaints is that the inspection program is a farce, and that therefore the continued use of even harmless action devices can perpetuate chemical soring. However, the AHPA voluntarily dismissed its separate claim in the proceeding below concerning lax enforcement when the Secretary published a notice requesting public comment on the possibility of amending the present inspection system. *See* Mem. Op. at 2 n. 1. Other material in the record undermines the AHPA's contention that the ability to use action devices in the ring encourages illegal chemical soring. The Department's inspection reports show soring violations involving horses that compete in classes where action devices are not used in the ring. Moreover, the Secretary explicitly concluded that heightened inspection and enforcement activities rather than an outright ban on action devices would best prevent the practice of chemical soring.

That is not to suggest that one could not locate facts in the record to support a contrary decision, as the district court's decision amply demonstrates, but such a *de novo* reweighing of the evidence presented to the Secretary is not proper when reviewing agency action under an arbitrary and capricious test. *See Ethyl Corp. v. Envi-*

*ronmental Protection Agency*, 541 F.2d 1, 37 (D.C.Cir.), *cert. denied*, 426 U.S. 941, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976) (observing that records frequently contain evidence that can be isolated to support "virtually any inference that one might care to draw").

### III. CONCLUSION

The Horse Protection Act delegates broad authority to the Secretary of Agriculture to prohibit any devices or practices that can reasonably be expected to cause soring. Had the Act placed a duty on the Secretary to prohibit anything that might perpetuate soring, then the district court's decision to vacate and remand would have been proper. But since the Act does not impose such a duty, the regulations at issue here are permissible. After reviewing the rulemaking record and the arguments of the parties, we conclude that the Secretary's decision to permit the use of six-ounce action devices was not arbitrary or capricious. The district court impermissibly substituted its judgment for the agency's in this case. The injunction governing the interim regulations is hereby vacated, and the case is remanded to the district court for proceedings not inconsistent with this opinion.

*It is so ordered.*