**UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent,**

v.

**Jack KELLY and Erma Kelly, Petitioners.**

No. 94–1447.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1994.

Decided Oct. 25, 1994.

Gary L. Stamper, Columbia, MO, argued, for appellants.

M. Bradley Flynn, Washington, DC, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, WOLLMAN and BEAM, Circuit Judges.

RICHARD S. ARNOLD, Chief Judge.

A Missouri couple appeals from an order issued by the Secretary of the United States Department of Agriculture levying sanctions against them for violating the Horse Protection Act, 15 U.S.C. § 1821 et seq. The couple filed a notice of appeal in this Court 31 days after the date of the Secretary's order,

one day after the time for filing the notice of appeal expired. Because the notice of appeal was untimely, the appeal must be dismissed for want of jurisdiction.

## I.

■ The Horse Protection Act declares the act of "soring" a horse inhumane,[1] and prohibits the "showing or exhibiting" of a "sore" horse.[2] Soring is the practice of placing action devices or chemical irritants on the lower areas of a horse's legs, inflicting pain so that the horse exhibits a high-stepping gait. See *American Horse Protection Ass'n, Inc. v. Yeutter*, 917 F.2d 594 (D.C.Cir.1990). Under the Horse Protection Act, horses entered in Tennessee Walking Horse competitions are subject to inspection by a designated qualified person or a representative of the United States Department of Agriculture (USDA).[3] If the inspection reveals soring, the horse is then examined by two USDA veterinarians, who conduct independent tests on the horse. If both veterinarians find either both forelegs or both hind legs are sore, they prepare a joint report using Form 19–7, memorializing their findings. This case results from a finding by two USDA veterinarians that Jack and Erma Kelly entered a sore horse in the 1989 Tennessee Walking Horse National Celebration.

The Kellys, horse enthusiasts of over 20 years, are engaged in the training and competitive exhibition of Tennessee Walking Horses.[4] In 1989 they acquired a three-year-old stallion named "Jo Jack's Pride" (Pride). In September of that year, the Kellys entered Pride in the Tennessee Walking Horse National Celebration at Shelbyville, Tennessee.

Prior to competition, Pride was examined in accordance with the Horse Protection Act. 15 U.S.C. § 1823. The examiner concluded that Pride was sore[5] and excused him from competition. Pride was later examined by two USDA veterinarians. Each veterinarian examined Pride in turn, and each found that he exhibited a pain reaction to touch in his front legs. The veterinarians concluded that Pride was sore and completed a joint report (Form 19–7) to that effect. They later prepared individual affidavits outlining the examination procedure and their findings.

Based on the veterinarians' findings, the Administrator of the Animal and Plant Health Inspection Service[6] filed a complaint against the Kellys alleging that they violated the Horse Protection Act by entering a sore horse in the 1989 Tennessee Walking Horse National Celebration. At the Kellys' hearing before the Administrative Law Judge (ALJ), the USDA presented the veterinarians' joint report and their affidavits as its primary evidence. Also presented was the veterinarians' testimony describing in detail the procedure used to examine a horse for soreness under the Horse Protection Act. Although neither veterinarian recalled Pride's exami-

---

1. 15 U.S.C. § 1822(1).

2. 15 U.S.C. § 1824(2)(A).

3. 9 C.F.R. § 11.20(b)(2); 9 C.F.R. § 11.21.

4. An American breed of large easy-gaited saddle horses that is largely of Standardbred and Morgan ancestry. *Webster's Third New International Dictionary* 2356 (1971).

5. "Sore" is defined by 15 U.S.C. § 1821 as follows:

    (3) The term "sore" when used to describe a horse means that—
    (A) an irritating or blistering agent has been applied, internally or externally, by a person to any limb of a horse,
    (B) any burn, cut, or laceration has been inflicted by a person on any limb of a horse,
    (C) any tack, nail, screw, or chemical agent has been injected by a person into or used by a person on any limb of a horse, or
    (D) any other substance or device has been used by a person on any limb of a horse or a person has engaged in a practice involving a horse,
    and, as a result of such application, infliction, injection, use, or practice, such horse suffers, or can reasonably be expected to suffer, physical pain or distress, inflammation, or lameness when walking, trotting, or otherwise moving, except that such term does not include such an application, infliction, injection, use, or practice in connection with the therapeutic treatment of a horse by or under the supervision of a person licensed to practice veterinary medicine in the State in which such treatment was given.

6. The Animal and Plant Health Inspection Service is a division of the USDA charged with enforcing the Horse Protection Act.

nation, they both testified that they used the same procedure on all horses.

After considering the evidence, the ALJ concluded that the veterinarians' joint report lacked credibility because of a change or alteration made by one of the doctors.[7] The ALJ intimated that the findings of the veterinarians would not be unanimous as required by the Act, but for the alteration. He also discredited one affidavit, noting that it was handwritten by someone other than the examining veterinarian. Finally, the ALJ denounced the inability of the veterinarians to recall the actual examination of Pride. On July 2, 1992, in accordance with his conclusions, the ALJ issued an Initial Decision and Order dismissing the complaint.

The USDA appealed,[8] and the matter was reviewed by its Judicial Officer.[9] The Judicial Officer concluded that the veterinarians' affidavits and the joint report were credible, noting that the changes on the report simply corrected errors resulting from inadvertent markings. He also concluded that the veterinarians found Pride's forelegs to be sore. Expounding further, he stated that the Act requires only that the examining veterinarians find either both forelegs or both hind legs are sore, as indicated on the joint report. On the basis of the evidence—the joint report, the affidavits, and the testimony—as to the procedure followed by the veterinarians—the Judicial Officer concluded that the evidence presented supported the charges against the Kellys. Accordingly, the Secretary's Final Decision and Order reversed the Initial Decision and Order of the ALJ, imposed a fine of $2,000, and prohibited the Kellys from taking part in horse shows for one year.

The Kellys appeal from the Secretary's Order. They maintain that the Secretary's finding that Pride was sore when entered in the Celebration was not supported by sub-stantial evidence. In its Response to the Kellys' petition, the USDA contends that the petition for review should be dismissed because the notice of appeal was untimely, and in the alternative, that the Secretary's decision was supported by substantial evidence.

## II.

The Secretary's order was signed and docketed on December 28, 1993. The order was mailed on December 29, and received by the Kellys' counsel on January 4, 1994. On January 28, 1994, the Kellys filed a notice of appeal in this Court.[10]

We may review an administrative order if "within the time prescribed by law ... a notice of appeal" is filed with the clerk of this Court. Fed.R.App.P. 15(a). Under the Horse Protection Act, an appeal from the Secretary's order must be filed "within 30 days from *the date of such order* and by simultaneously sending a copy of such notice by certified mail to the Secretary." 15 U.S.C. § 1825(b)(2) (emphasis added). The USDA submits that, in this case, the "date of such order" commencing the 30–day period was December 28, the date on which the order was signed and docketed. The Kellys, on the other hand, contend that the 30–day period commenced on December 29, the date on which the order was mailed. They advance two arguments in support of this contention. We consider each argument in turn.

First, they point to the following language found in the order: "The provisions of the disqualification order shall become effective on the 30th day after service of this Order on Respondents." They suggest that the effective date of the sanctions marks the commencement of the 30–day period. We reject this argument without hesitation. The date

---

7. Two changes appear on the face of the report. The first change appears in a leg diagram where an area once marked "sore" was whited out and initialed. The name of Mrs. Kelly was scratched out and the name of Mr. Kelly appeared as the trainer.

8. The Kellys failed to file a response to the appeal.

9. Donald A. Campbell, Judicial Officer.

10. On April 6, 1994, the Kellys also filed an Application for Stay Pending Review to suspend the imposition of the period of disqualification by the Secretary. The USDA made no objection, and the stay was granted by this Court on April 25, 1994. The stay is dissolved with the filing of this opinion.

of an order and the effective date of its penalties are clearly distinct.

Next, the Kellys insist that December 29, the date of service, or the mailing of the order, marks the commencement of the 30–day period. In support of their position, the Kellys cite *Energy Probe v. United States Nuclear Regulatory Comm'n*, 872 F.2d 436 (D.C.Cir.1989). In *Energy Probe* the Court concluded that the "date on which the order is signed, the Commission's seal is affixed, and the order is served" commenced the appeal period at issue. *Energy Probe*, 872 F.2d at 437. The Kellys maintain that in the instant case, as in *Energy Probe*, the period begins on the date the order is mailed or served.

We find the Kellys' argument unpersuasive for several reasons. First, the plain language of the provision before us identifies the commencing day as the date of the order. The order in question is dated December 28, 1993. Giving the words of the Horse Protection Act their ordinary meaning, *Bruhn's Freezer Meats v. United States Department of Agriculture*, 438 F.2d 1332, 1338 (8th Cir. 1971), we can only conclude that December 28 commences the limitation period.

Further, while we might agree with the *Energy Probe* Court with regard to its interpretation of the Hobbs Act, 28 U.S.C. § 2341 et seq., we are convinced that the rule pronounced is not applicable in this case. The issue in *Energy Probe* differs factually from the one presented to us. In *Energy Probe*, the question was whether the "entry" date of the Nuclear Regulatory Commission's order was the date on which it was signed and stamped "served," or the date that the parties actually received the order by mail. The Court chose the earlier of the two dates. Notably, in *Energy Probe*, the date the order was signed and the date of service coincided. In this case, the issue is whether the period begins on the date of the order, or on the date service was effected by mailing. The Kellys urge this Court to adopt the rule

found in *Energy Probe*, which makes the date of service the beginning of the period in question in cases involving the Hobbs Act.

As we read § 1825(b) of the Horse Protection Act, the 30–day period begins on the date of the order,[11] not the date on which service is mailed. Service is a distinct function occurring after the order is issued and docketed.[12] Consequently, under the Horse Protection Act, the date of the order may differ from the date of service. When the two dates differ, as in this case, it is the date of the order which marks the beginning of the 30–day period.

Moreover, because the Act is clear on its face, it would be improvident to attempt to find meaning elsewhere. See *Arkansas AFL–CIO v. Federal Communication Commission*, 11 F.3d 1430 (8th Cir.1993). Here we consider the provision of the Horse Protection Act which applies specifically to the order issued by the Secretary in this case, not the Hobbs Act considered in *Energy Probe*. Thus, the holding in *Energy Probe* is of limited persuasive value.

Additionally, we recognize that we must give the Secretary's interpretation of the Horse Protection Act some deference absent precedent or legislative history to the contrary. See *Beef Nebraska, Inc. v. United States*, 807 F.2d 712, 716 (8th Cir.1986). The Secretary maintains that the date of the order, December 28, 1993, marks the beginning of the period. We agree. The appeal period begins on the date found on the face of the order, and not on the date on which the order is served.

■ Finally, we venture the following observation. Even if this case were properly before us, the Kellys would receive no relief on the merits of their claim. This Court will set aside the Secretary's order only if it is unsupported by substantial evidence. 15 U.S.C. § 1825(b)(2). Substantial evidence is "such evidence as a reasonable mind might

11. Section 1.145(i) of Title 7A C.F.R. provides in part:

> (i) Decision of the judicial officer on appeal. As soon as practicable ... the Judicial Officer ... shall rule on the appeal.... A final order

issued by the Judicial Officer shall be filed with the Hearing Clerk. Such order may be regarded by the respondent as final for purposes of judicial review....

12. 7A C.F.R. § 1.147(b).

accept as adequate to support a conclusion." *Cox v. United States Dept. of Agriculture,* 925 F.2d 1102, 1104 (8th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 178, 116 L.Ed.2d 141 (1991), quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). In this instance, the record is replete with evidence supporting the Secretary's conclusion that Pride was sore when entered in the Celebration. The veterinarians' joint report and affidavits indicate that Pride was sensitive to the touch. In addition, the veterinarians described their usual testing procedures and indicated that the same procedure was used to test Pride.

The Kellys' claim that the veterinarians' joint report was inadmissible is without merit. We find nothing nefarious about the changes on the veterinarians' joint report which would lead us to discredit its content. This is particularly true since the changes had little or no impact on the outcome of the case. In sum, we believe that the Secretary's finding that Pride was sore when entered in the Celebration is supported by substantial evidence.

### III.

The Kellys' notice of appeal was filed with this Court one day late. We have stated that timeliness of an appeal from an administrative order is a jurisdictional requirement that cannot be modified or waived by this Court. *Cartersville Elevator, Inc. v. I.C.C.,* 724 F.2d 668, 672 (8th Cir.), *adhered to en banc,* 735 F.2d 1059 (1984). We have no choice but to dismiss this appeal. The stay previously entered is dissolved.

It is so ordered.